AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

## for the
### Eastern District of Virginia

F I L E D

MAR – 1 2017

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
PROPERTY FUTHER DESCRIBED IN ATTACHMENT A
LOCATED AT: ALEXANDRIA POLICE DEPARTMENT
3600 WHEELER AVE, ALEXANDRIA, VA 22304

)
)
)
)
)
)

Case No.  1:17-SW-101

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1028A and 1344 | Aggravated Identity Theft and Bank Fraud |

The application is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by
AUSA Laura Fong

_____
*Applicant's signature*

Mikel Brancato, U.S. Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _1 mar 17_____

City and state: _Alexandria, Virginia_____

_____ /s/ _____
Ivan D. Davis
United States Magistrate Judge

# ATTACHMENT A

## ITEMS TO BE SEARCHED

The items to be searched are:

- Wig

- Hat

- Sunglasses

- Blazer

- Purse

- Numerous cellular telephones

- Money Orders

- Mail addressed to multiple individuals

- J&J Auto Rental Receipt

- Suitcase with ID Cards

- Financial documents, credit cards, debit cards, checkbooks

- Identification documents/cards

- Any other property held under APD Case #15-184898

- Any other property held under APD Case # 16-116728

The items are currently located at the Alexandria Police Department ("APD"), 3600 Wheeler Ave, in Alexandria, Virginia, which is within the Eastern District of Virginia.

## ATTACHMENT B

## ITEMS SUBJECT TO SEIZURE

The items to be seized constitute fruits, evidence, contraband, and instrumentalities of violations of Title 18, United States Code, Sections 1028A (aggravated identity theft) and 1344 (bank fraud), including:

1.    Clothing and disguises used by MCCRICKARD and co-conspirators

2.    Records and documents for financial accounts, lines of credit, utility bills, rental records

3.    U.S. Mail addressed to all names

4.    Parcels addressed to all names

5.    Credit or debit cards

6.    Cell phones

7.    Counterfeit identification cards, driver's licenses, social security cards

8.    ID manufacturing devices

9.    Credit card skimmers, readers, or other related equipment

10.   Currency, Money Orders and other financial instruments

In addition, information to be obtained from cellular phones contained in the SUBJECT PROPERTY is the fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 1028A, and includes the following items that may be located on and in the above-described devices including associated external storage media capable of storing information physically located within the cellular phones:

A.   Subscriber information modules (SIM cards[1])

B.   Address books and calendars;

C.   Audio and video clips

D.   Call histories and call logs, including incoming, outgoing and missed calls

E.   Photographs and associated metadata[2]

F.   Text messages, multimedia messages, recorded messages and voicemails

G.   E-mail messages and attachments, whether read or unread

H.   Internet World Wide Web (WWW) browser files including, but not limited to, browser history, browser cache, stored cookies; browser favorites, auto-complete form history and stored passwords;

I.   Global position system (GPS[3]) data including, but not limited to coordinates, way points and tracks;

---

[1] Subscriber Identity Modules, sometimes referred to as SIM cards, are portable memory chips often used in notebook computers and some models of cellular phones. SIM cards securely store the service-subscriber key used to identify subscribers. The SIM card allows users to change phones by simply removing the SIM card from one mobile phone and inserting it into another mobile phone or broadband telephony device. SIM cards store information used to authenticate and identify subscribers, including but not limited to the Service Provider Name, Service Dialing Numbers and Value Added Service applications. They can also be used to store personal address books and SMS data.

[2] Metadata is generally defined as data about data. It is stored within the data file itself, but is not normally seen when viewing the file. Metadata includes Exchangeable Image File Format (EXIF) which is a specification for image file formats used by digital camera and includes specific information about the photograph.

[3] The Global Positioning System (GPS) is a satellite-based navigation system which provides location and time information.



IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | |
| PROPERTY FUTHER DESCRIBED IN ) | |
| ATTACHMENT A LOCATED AT: ) | Case No.:  1:17-SW-101 |
| ) | |
| ) | |
| ALEXANDRIA POLICE DEPARTMENT ) | |
| 3600 WHEELER AVE ) | |
| ALEXANDRIA, VA 22304 ) | |

## AFFIDAVIT IN SUPPORT OF A SEARCH AND SEIZURE WARRANT

I, Mikel Brancato, a Postal Inspector with the United States Postal Inspection Service

("USPIS"), being duly sworn, depose and state as follows:

### INTRODUCTION

1.     The purpose of this affidavit is to secure a search and seizure warrant for the

SUBJECT PROPERTY, which are items that were seized by the Charles County Sheriff's

Office ("CCSO") pursuant to a state search warrant executed on March 11, 2016. The

SUBJECT PROPERTY is further described in Attachment A. The items are currently located

at the Alexandria Police Department ("APD"), 3600 Wheeler Ave, in Alexandria, Virginia,

which is within the Eastern District of Virginia.

2.     I am employed as a Postal Inspector with the USPIS, assigned to the Washington

Division, having been so employed since February 2012. I am currently assigned to the

Northern Virginia Mail Theft Team at the Merrifield, Virginia Domicile. I am a graduate of the

USPIS Basic Inspector Training ("BIT") conducted at the Career Development Unit ("CDU"),

in Potomac, Maryland.

3.     I am an investigative or law enforcement officer of the United States within the



meaning of Title 18, U.S.C. § 2510(7) and empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, U.S.C. § 1028A.

4.     My duties and responsibilities as a Postal Inspector include, but are not limited to, conducting investigations into the theft of U.S. Mail in the Eastern District of Virginia in violation of federal law. These investigations often include violations of Title 18, U.S.C. § 1344 (Bank Fraud) and Title 18, U.S.C. § 1028A (Aggravated Identity Theft).

5.     This affidavit is submitted for the purpose of showing probable cause to believe the SUBJECT PROPERTY contains the evidence, contraband, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1028A and 1344. This affidavit does not set forth each and every fact that I or others have learned during the course of this investigation.

<u>OVERVIEW OF INVESTIGATION AND CASE STATUS</u>

6.     The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation from other individuals, including other law enforcement officers, as well as my review of documents and records related to this investigation, communications with others who have personal knowledge of the events and circumstances, and information gained through my training and experience.

7.     The USPIS and APD have been investigating an identity theft and bank fraud ring operating in and around the Washington, DC area.

8.     On December 16, 2016, U.S. Magistrate Judge John F. Anderson found probable cause to issue a complaint charging **ROBERT MATTHEW MCCRICKARD** (**"MCCRICKARD"**) with aggravated identity theft in violation of 18 U.S.C. § 1028A. For background, I incorporate by reference the complaint and the affidavit in support of the

2

complaint, which is attached hereto as Exhibit 1 and details **MCCRICKARD**'s use of identity theft victims' Personably Identifiable Information (PII) to rent apartments, open bank accounts and obtain credit cards and debit cards, a scheme he participated in along with potential co-conspirators, some who are known to law enforcement and some who are not.

9.     On February 17, 2017, **MCCRICKARD** was taken into federal custody following periods of pre-trial detention in state custody and he made his initial appearance in federal court before U.S. Magistrate Judge Theresa C. Buchanan. On February 22, 2017, **MCCRICKARD** appeared before U.S. Magistrate Judge Michael S. Nachmanoff for his preliminary and detention hearings. Judge Nachmanoff found that there was probable cause for the case to proceed and ordered **MCCRICKARD** detained. *See* 1:16-MJ-569.

10.    Law enforcement has uncovered evidence that **MCCRICKARD** and others used fraudulently obtained credit and debit cards to make purchases and withdraw money from ATMs, based in part on ATM surveillance images corresponding to dated and time-stamped records of transactions, witness descriptions, and information obtained from victim businesses that correspond to the fraudulent transactions. These fraudulent transactions have resulted in a financial loss for numerous financial institutions and local businesses. The evidence providing probable cause for this search includes information regarding the victimization of approximately 40 individuals, financial institution and business victims with a total known loss in excess of $460,000.

11.    During the course of the investigation, law enforcement determined, based on information provided by employees at various victim businesses and financial institutions, that **MCCRICKARD** used fake IDs (containing the information from an identity theft victim, but the true photograph of **MCCRICKARD**) to obtain an apartment lease. He then used the fake

3

ID to fraudulently obtain an apartment lease, which he would supply as proof of identity or residence when applying to open bank, debit and/or credit card accounts at local financial institutions. **MCCRICKARD** then used the fraudulently obtained bank and debit/credit cards to make fraudulent purchases or withdrawals. Information provided by victim businesses and financial institutions, as well as surveillance images, suggests that this is a scheme he participated in with potential co-conspirators.

12. Law enforcement identified **MCCRICKARD** as one of the participants in this identity theft scheme through surveillance images and the description of witnesses. For example, law enforcement was informed by victim W.L. that, on September 28, 2015, W.L.'s PII was used to fraudulently apply for a lease for an apartment located in Alexandria, VA. W.L. confirmed that he had neither traveled to Alexandria nor applied for a lease there. Surveillance images show that **MCCRICKARD** entered a BB&T bank in Vienna, Virginia, on or about November 6, 2015 and used a fake ID in W.L.'s name to open accounts in W.L.'s name. **MCCRICKARD**'s image was captured by ATM cameras as he later withdrew money from these accounts. W.L. also alerted law enforcement to the fact that his information was used to establish credit at Arhaus Furniture, a high-end furniture store located in Rockville, Maryland. Law enforcement was able to identify **MCCRICKARD** as the individual who applied for credit and made fraudulent purchases at Arhaus Furniture through witness descriptions. Finally, law enforcement determined, through witness descriptions, surveillance images, and business records that **MCCRICKARD** also rented a self-storage unit at Public Storage and Self-Storage Plus in Rockville, MD in W.L.'s name. Law enforcement determined that the Public Storage self-storage unit was rented to receive the fraudulently purchased Arhaus furniture shipment because its address was listed as the shipping address for the

4

furniture fraudulently purchased at Arhaus Furniture. The total loss for fraudulent activity using W.L.'s identity is over $74,000.

13.    On or about March 10, 2016, an officer with the CCSO, in Charles County, Maryland, conducted a traffic stop on **MCCRICKARD** in the parking lot of a Super 8 Motel for an equipment violation on his vehicle. During the officer's investigation, he determined that **MCCRICKARD** had an outstanding arrest warrant for Identity Theft from APD. **MCCRICKARD** told CCSO officers he was "laying low" at the motel because he had a bench warrant that his lawyer was working on having recalled. It was later determined that **MCCRICKARD** rented the motel room using a fake ID in the name of another identity theft victim.

14.    CCSO officers used a narcotic detecting canine, and other factors, to obtain a search warrant for the motel room from a Charles County Circuit Court Judge. I incorporate by reference the search warrant, which is attached hereto as Exhibit 2. The search warrant reads, in part: "Wherefore, the Applicant prays that a Search & Seizure Warrant be issued authorizing him, with the necessary and proper assistance, in the day or night, to enter and search the hereinafter named vehicle/premises, and to search all persons found in or upon or who may enter the same, and to search for and seize all paraphernalia used in connection with, or incidental to the operation of the aforementioned or any criminal activities, and to seize any evidence pertaining to such criminal activity; the Applicant further prays that the Warrant run to any safe or container, locked or unlocked, found in or upon said vehicle/premises/person, and to seize such of the contents as pertain to the subject criminal activities, and particularly such articles as may be set forth and described in the Affidavit(s) attached hereto."

15.    The SUBJECT PROPERTY items were obtained during the execution of the

5

attached search warrant, and later taken into the custody of APD in order to aid in the state's

Virginia prosecution of defendant **MCCRICKARD** on identity-theft-related charges. The state

authorities in Virginia ultimately did not proceed on its prosecution of **MCCRICKARD** and

on February 17, 2017, **MCCRICKARD** was taken into federal custody to answer to federal

charges.

## RELEVANT LAW

16.   18 U.S.C. § 1028A (Aggravated Identity Theft) makes it a felony for anyone to,

during and in relation to any felony violation enumerated in subsection (c), knowingly transfer,

possess, or use, without lawful authority, a means of identification of another person. The term

"felony violation enumerated in subsection (c)" means any offense that is a felony violation of

any provision contained in chapter 63 (relating to mail, bank, and wire fraud).

17.   18 U.S.C. § 1344 (Bank Fraud) makes it a felony for anyone to (1) defraud a

financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or

other property owned by, or under the custody or control of, a financial institution, by means of

false or fraudulent pretenses, representations, or promises.

## PROBABLE CAUSE

18.   I incorporate by reference paragraphs 6 through 15, which outline the evidence

linking **MCCRICKARD** to the identity theft scheme that is the subject of this case. Based on

these known facts and my training and experience, I believe there is probable cause that the

SUBJECT PROPERTY seized by authorities in Charles County, Maryland and transferred to

the custody of APD contain evidence, fruits, and instrumentalities of violations of 18 U.S.C.

§ 1028A, as is provided in further detail below:

19.   Based on my experience and training, I know that individuals involved in identity

theft and bank fraud utilize electronic equipment including cellular phones and other personal electronic devices to facilitate the furtherance of the fraud and avoid detection by law enforcement.  For example, individuals engaged in fraudulent activity at financial institutions often use cellular phones to communicate with co-conspirators. They often utilize this form of communication to alert each other of law enforcement officers in the area, or for guidance on conducting the various fraud schemes. Thus, it is likely that **MCCRICKARD** and his co-conspirators used cell phones to facilitate their criminal scheme.

20.    Based on my experience and training, I also know that perpetrators of complex criminal schemes often use phones with pre-paid phone plans as "burner" phones that are difficult to trace back to their owners because there are few records law enforcement can obtain to establish the identity of the phones' users. Given the number of individuals **MCCRICKARD** and his co-conspirators victimized, it is likely that they used "burner" phones to communicate with one another or to pose as identity theft victims.

21.    In addition, based on my experience and training, I know that individuals perpetrating identity crime may pose as identity theft victims in order to further their scheme. In order to avoid detection by law enforcement, identity theft perpetrators may use disguises in the form of clothing and wigs. In this case, witness descriptions and surveillance images provide probable cause to believe **MCCRICKARD** and/or his co-conspirators were wearing distinctive clothing and such disguises.

22.    Further, I know, based on my experience and training, that perpetrators of identity theft may attempt to use the mails to further their scheme. For instance, they may attempt to divert mail containing statements of fraudulently opened financial accounts from the true addresses of identity theft victims in order to avoid detection. Thus, it is likely that a

7

perpetrator of an identity theft crime will cause mail intended for identity theft victims, perhaps statements of fraudulently opened accounts, to be diverted to the perpetrator and this mail will, thus, likely be in the perpetrator's possession.

23.     Lastly, I know, based on my experience and training, that perpetrators of large-scale identity theft often have numerous forms of identification – both genuine and fraudulent-- along with devices that are used for the manufacturing or testing of fraudulent forms of identification, records of financial transactions and fraudulently opened accounts, and financial instruments.

## TECHNICAL TERMS

19.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones

8

may also include global positioning system ("GPS") technology for determining the location of the device.

      b.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

      c.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

      d.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can

contain records of the addresses or locations involved in such navigation. The Global

Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting

the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly

transmits by radio a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that are publicly

available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives

signals from at least four satellites, a computer connected to that antenna can mathematically

calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used

for storing data (such as names, addresses, appointments or notes) and utilizing computer

programs. Some PDAs also function as wireless communication devices and are used to access

the Internet and send and receive e-mail. PDAs usually include a memory card or other

removable storage media for storing data and a keyboard and/or touch screen for entering data.

Removable storage media include various types of flash memory cards or miniature hard drives.

This removable storage media can store any digital data. Most PDAs run computer software,

giving them many of the same capabilities as personal computers. For example, PDA users can

work with word-processing documents, spreadsheets, and presentations. PDAs may also include

global positioning system ("GPS") technology for determining the location of the device.

   f.  Internet: The Internet is a global network of computers and other electronic

devices that communicate with each other. Due to the structure of the Internet, connections

between devices on the Internet often cross state and international borders, even when the

devices communicating with each other are in the same state.

20.     Based on my training and experience, it is likely that the cellular phones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence, fruits and instrumentalities of violations of 18 U.S.C. § 1028A.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22.     There is probable cause to believe that things that were once stored on the cellular phones contained within the SUBJECT PROPERTY may still be stored there, for at least the following reasons:

a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by

11

an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      c.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

      d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

      e.      The cellular phones in question have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into the possession of Charles County, Maryland authorities and the APD.

      23.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the cellular phones within the SUBJECT PROPERTY was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the cellular phones because:

      a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such

12

as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25.     *Manner of execution.* Because this warrant seeks only permission to examine SUBJECT PROPERTY already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.

14

CONCLUSION

24.     For the foregoing reasons, I request that this Court issue a warrant to authorize a search of the SUBJECT PROPERTY items described in Attachment A, to obtain the fruits, evidence, contraband, and instrumentalities identified in Attachment B of violations of Title 18, United States Code, Sections 1028A (aggravated identity theft) and 1344 (bank fraud). Permission is expressly sought to search the SUBJECT PROPERTY to seize the evidence, fruits, and instrumentalities listed in Attachment B. Because the SUJECT PROPERTY is already in the custody of law enforcement, permission is requested to return the search warrant on the basis of the seizure of the evidence.

Respectfully submitted,

Mikel Brancato
U.S. Postal Inspector
United States Postal Inspection Service

Reviewed by AUSA Laura Fong

Subscribed and sworn to before me
this 1st day of March, 2017.

/s/
Ivan D. Davis
United States Magistrate Judge

15

## ATTACHMENT A

## ITEMS TO BE SEARCHED

The items to be searched are:

- Wig

- Hat

- Sunglasses

- Blazer

- Purse

- Numerous cellular telephones

- Money Orders

- Mail addressed to multiple individuals

- J&J Auto Rental Receipt

- Suitcase with ID Cards

- Financial documents, credit cards, debit cards, checkbooks

- Identification documents/cards

- Any other property held under APD Case #15-184898

- Any other property held under APD Case # 16-116728

The items are currently located at the Alexandria Police Department ("APD"), 3600 Wheeler Ave, in Alexandria, Virginia, which is within the Eastern District of Virginia.

## ATTACHMENT B

## ITEMS SUBJECT TO SEIZURE

The items to be seized constitute fruits, evidence, contraband, and instrumentalities of violations of Title 18, United States Code, Sections 1028A (aggravated identity theft) and 1344 (bank fraud), including:

1.   Clothing and disguises used by MCCRICKARD and co-conspirators

2.   Records and documents for financial accounts, lines of credit, utility bills, rental records

3.   U.S. Mail addressed to all names

4.   Parcels addressed to all names

5.   Credit or debit cards

6.   Cell phones

7.   Counterfeit identification cards, driver's licenses, social security cards

8.   ID manufacturing devices

9.   Credit card skimmers, readers, or other related equipment

10.  Currency, Money Orders and other financial instruments

In addition, information to be obtained from cellular phones contained in the SUBJECT PROPERTY is the fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 1028A, and includes the following items that may be located on and in the above-described devices including associated external storage media capable of storing information physically located within the cellular phones:

A.   Subscriber information modules (SIM cards[1])

B.   Address books and calendars;

C.   Audio and video clips

D.   Call histories and call logs, including incoming, outgoing and missed calls

E.   Photographs and associated metadata[2]

F.   Text messages, multimedia messages, recorded messages and voicemails

G.   E-mail messages and attachments, whether read or unread

H.   Internet World Wide Web (WWW) browser files including, but not limited to, browser history, browser cache, stored cookies; browser favorites, auto-complete form history and stored passwords;

I.   Global position system (GPS[3]) data including, but not limited to coordinates, way points and tracks;

---

[1] Subscriber Identity Modules, sometimes referred to as SIM cards, are portable memory chips often used in notebook computers and some models of cellular phones. SIM cards securely store the service-subscriber key used to identify subscribers. The SIM card allows users to change phones by simply removing the SIM card from one mobile phone and inserting it into another mobile phone or broadband telephony device. SIM cards store information used to authenticate and identify subscribers, including but not limited to the Service Provider Name, Service Dialing Numbers and Value Added Service applications. They can also be used to store personal address books and SMS data.

[2] Metadata is generally defined as data about data. It is stored within the data file itself, but is not normally seen when viewing the file. Metadata includes Exchangeable Image File Format (EXIF) which is a specification for image file formats used by digital camera and includes specific information about the photograph.

[3] The Global Positioning System (GPS) is a satellite-based navigation system which provides location and time information.

# EXHIBIT 1

AO 442 (Rev. 01/09) Arrest Warrant

UNDER SEAL

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| ROBERT MATTHEW MCCRICKARD | ) | Case No. 1:16MJ569   UNDER SEAL |
| | ) | |
| | ) | |
| *Defendant* | ) | |

RECEIVED
UNITED STATES MARSHAL
2016 DEC 16 PM 1:50
EASTERN DISTRICT
OF VIRGINIA
ALEXANDRIA DIVISION

## ARREST WARRANT

To:      Any authorized law enforcement officer

        **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   ROBERT MATTHEW MCCRICKARD
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☑ Complaint
☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:
Defendant did knowingly use, without lawful authority, a means of identification of another person during and in relation to a
felony violation enumerated in 18 U.S.C. § 1028A(c), to wit 18 U.S.C. § 1344 (Bank Fraud), knowing that the means of
identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

Date: **Dec. 16, 2016**

Issuing officer's signature

City and state:   Alexandria, Virginia

Hon. John F. Anderson, U.S. Magistrate Judge
*Printed name and title*

## Return

INFORMATION
COPY ONLY
NOTICE: BEFORE ARREST, VALIDATE
THROUGH NCIC. ORIGINAL
HELD BY U.S. MARSHAL

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____

COPY

Arresting officer's signature

_____
*Printed name and title*

AO 91 (Rev. 08/09) Criminal Complaint

UNDER SEAL

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

DEC 16 2016

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| ROBERT MATTHEW MCCRICKARD | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

Case No. 1:16MJ569    UNDER SEAL

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ November 6, 2015 _____ in the county of _____ Fairfax _____ in the
_____ Eastern _____ District of _____ Virginia _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1028A(a)(1) | Defendant did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit 18 U.S.C. § 1344 (Bank Fraud), knowing that the means of identification belonged to another actual person. |

This criminal complaint is based on these facts:

(See attached affidavit.)

☑ Continued on the attached sheet.

Reviewed by AUSA/SAUSA:

Maya Song/Laura Fong

*Complainant's signature*

Mikel Brancato
United States Postal Inspector, USPIS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Dec.16, 2016

/s/ JfA

John F. Anderson
United States Magistrate Judge
*Judge's signature*

City and state:          Alexandria, Virginia

Hon. John F. Anderson, U.S. Magistrate Judge
*Printed name and title*

# UNDER SEAL

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

Alexandria Division

DEC 1 6 2016

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL CASE NO. 1:16-MJ-569 |
| | ) | |
| ROBERT MATTHEW MCCRICKARD | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Mikel Brancato, being duly sworn, state the following:

## I.  INTRODUCTION

1.    I am a United States Postal Inspector with the United States Postal Inspection Service ("USPIS") assigned to the Washington Division, having been so employed since February 2012. I am currently assigned to the Northern Virginia Mail Theft and Identity Theft Team at the Merrifield, Virginia Domicile. Upon entering the USPIS, I completed twelve weeks of investigative training at the USPIS Career Development Unit in Potomac, Maryland. The training covered various aspects of federal law enforcement and conducting criminal investigations, including the investigation of fraud-related offenses. I have received additional training specifically in conducting white collar crime investigations and participated in investigations involving fraud at the state and federal level. I have participated in multiple investigations which have resulted in criminal arrests and prosecutions.

2.    My duties and responsibilities as a Postal Inspector include, but are not limited to, conducting investigations into identity theft in the Eastern District of Virginia in violation of federal law, including 18 U.S.C. § 1028A (Aggravated Identity Theft), as well as conducting investigations into violations of 18 U.S.C. § 1344 (Bank Fraud).

1

## II.     PURPOSE OF AFFIDAVIT

3.      The statements contained in this Affidavit are based on my experience and background as a Postal Inspector and on information provided by other law enforcement agents. I have not set forth every fact resulting from the investigation; rather I have set forth a summary of the investigation to date. For the reasons set forth below, your Affiant contends that this affidavit demonstrates there is probable cause to believe that ROBERT MATTHEW MCCRICKARD ("MCCRICKARD") violated 18 U.S.C. § 1028A (Aggravated Identity Theft).

## III.     OVERVIEW OF INVESTIGATION

4.      18 U.S.C. § 1028A (Aggravated Identity Theft) makes it a felony for anyone to, during and in relation to any felony violation enumerated in subsection (c), knowingly transfer, possess, or use, without lawful authority, a means of identification of another person. The term "felony violation enumerated in subsection (c)" means any offense that is a felony violation of any provision contained in chapter 63 (relating to mail, bank, and wire fraud).

5.      18 U.S.C. § 1344 (Bank Fraud) makes it a felony for anyone to (1) defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

6.      On or about December 15, 2015, VICTIM-1 ("V-1") notified the USPIS that he was a victim of identity theft. V-1 stated that a check of his credit report revealed fraudulent accounts and fraudulent activity occurring under his name in the Eastern District of Virginia. V-1 is a resident of the state of Ohio, and stated he has no affiliation in Virginia.

7.      Investigators undertook several investigative steps to identify MCCRICKARD as a target of the fraud investigation involving V-1. Among other things, on or about March 4, 2016, investigators submitted the photograph that was used in a fraudulent Ohio driver's license, which was used to open a Branch Banking and Trust ("BB&T") account in another identity theft victim's

2

name, for an automated facial recognition search on the Maryland Image Repository System ("MIRS"). The MIRS database includes images from the Maryland Motor Vehicle Administration ("MVA"), the Federal Bureau of Investigation ("FBI"), and other arrest photos that have been loaded into MIRS. On or about March 7, 2016, the automated search returned arrest and booking photographs of **MCCRICKARD** that matched the photograph from the fraudulent Ohio driver's license.

8.     Based on all available surveillance video and witness descriptions, investigators identified **MCCRICKARD** as the individual using a fraudulent Ohio Driver's License (depicting **MCCRICKARD**'s true photograph), as well as V-1's name, date of birth, address and Social Security number (collectively referred to as "Personally Identifiable Information" or "PII"), to obtain money and property he was not lawfully entitled to. Among other things, **MCCRICKARD**, acting without lawful authority, used V-1's PII to obtain lines of credit with BB&T; Arhaus Furniture/Comenity Bank; Sears, Roebuck and Company ("Sears")/Citibank; Wells Fargo and PNC Bank.

9.     Based on witness descriptions of **MCCRICKARD** and articles of clothing found in **MCCRICKARD**'s possession matching those descriptions, investigators also identified **MCCRICKARD** as the individual who used, without lawful authority, V-1's PII, for the purposes of renting an apartment in Alexandria, Virginia, within the Eastern District of Virginia, and for renting storage space at Public Storage and Self Storage Plus. Specifically, on or about September 28, 2015, **MCCRICKARD**, and potentially a co-conspirator, submitted an application to Station 650 Apartments, in Alexandria, Virginia, within the Eastern District of Virginia. The application contained a mixture of V-1's PII, another identity theft victim's PII, and fictitious information (e.g., work history, references, etc.). After obtaining the lease, **MCCRICKARD** used his new address to open accounts at the aforementioned financial institutions and as a mailing address for credit/debit cards associated with those accounts.

10.     On or about November 6, 2015, **MCCRICKARD** entered a BB&T branch in Vienna, Virginia, within the Eastern District of Virginia. **MCCRICKARD** submitted an application, using false identification documents containing V-1's PII, to establish credit and other financial

3

accounts. On or about November 9, 2015, **MCCRICKARD** entered a Wells Fargo Bank in Vienna, within the Eastern District of Virginia. **MCCRICKARD** submitted an application, using false identification documents containing V-1's PII, to establish credit and other financial accounts. On or about November 20, 2015, **MCCRICKARD** entered a PNC Bank branch in Herndon, Virginia, within the Eastern District of Virginia. **MCCRICKARD** submitted an application, using false identification documents containing V-1's PII, to establish credit and other financial accounts. On or about November 22, 2015, **MCCRICKARD** entered a Sears department store in Falls Church, Virginia, within the Eastern District of Virginia. **MCCRICKARD** submitted an application, using V-1's PII, to establish a credit account. On or about December 2, 2015, **MCCRICKARD** entered Arhaus Furniture in Rockville, Maryland. **MCCRICKARD** submitted an application, using V-1's PII, to establish a credit account. To facilitate the delivery of items he purchased fraudulently, **MCCRICKARD** rented storage units in V-1's name at Public Storage and Self Storage Plus in Rockville, Maryland. Investigators also associated each of these unlawful activities with **MCCRICKARD**. Specifically, surveillance images at BB&T depict **MCCRICKARD** establishing the fraudulent accounts. Witness descriptions at Arhaus Furniture match **MCCRICKARD**. Finally, the same fraudulent Ohio driver's license containing V-1's PII and **MCCRICKARD**'s photograph was used to open each account and rent the two storage units.

11.    In each instance, **MCCRICKARD** used the fraudulently opened accounts to make purchases and/or obtain monies, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises. For example, on or about December 2, 2015, immediately after applying for a credit account at Arhaus Furniture, **MCCRICKARD** ordered $18,453.04 worth of high-end furniture to be shipped to the aforementioned Public Storage unit. The total orders caused a net loss of $30,695.09 to Arhaus Furniture. Additionally, on or about December 2, 2015, **MCCRICKARD** withdrew funds from the BB&T account at an ATM in Rockville, MD. The total loss suffered by BB&T on V-1's accounts is $17,049.65. In addition to the loss suffered by Arhaus Furniture, **MCCRICKARD** caused a combined loss of $39,236.25 to the victim financial institutions.

12.   To identify potentially fraudulent accounts, investigators initially utilized information provided by identity theft victim V-1. Investigators then contacted fraud investigators at each financial institution and victim business. Those victim businesses provided accounting statements and, where available, surveillance images. The surveillance images revealed **MCCRICKARD** and co-conspirators withdrawing money from or opening the fraudulent accounts.

13.   To date, it has been determined that, in addition to V-1, **MCCRICKARD**'s scheme victimized over 50 individuals and six financial institutions. Additionally, **MCCRICKARD**'s aggravated identity theft and bank fraud scheme victimized at least eight non-bank companies.

14.   Investigation has shown that **MCCRICKARD** was aware that he was using the name and identity of a real person, and not providing fictitious information. Among other things, **MCCRICKARD** submitted the true name, address, date of birth, and Social Security number of V-1 to each financial institution and the Station 650 Apartments for the purpose of obtaining bank accounts, credit accounts, and a lease approval based on V-1's true credit history and score. To comply with the Bank Secrecy Act and the USA Patriot Act, all financial institutions are required to obtain, verify and record information that identifies each person who opens an account. This fact is disclosed to all applicants. Therefore, upon information and belief, **MCCRICKARD** knew that he was using the PII of real victims without lawful authority because using fictitious, made-up PII would not have passed verification and would not have allowed him to repeatedly obtain credit cards, debit cards, bank accounts or lease approvals.

15.   On or about March 10, 2016, **MCCRICKARD** was arrested by the Charles County, Maryland Sheriff's Office for identity theft and drug charges. That same day, law enforcement officers executed a search warrant on a motel room in which **MCCRICKARD** was known to be staying. During the search, officers recovered numerous fraudulent identification cards, Social Security cards, credit/debit cards, apartment leases, pre-paid phones, a credit card reader, and bank statements indicating the breadth of the aggravated identity theft and bank fraud scheme.

16.   The estimated loss for V-1 is approximately $74,250. The total estimated loss (for all victims) is $463,380.

5

## IV.   CONCLUSION

17.      Based upon the information set forth in this affidavit, probable cause exists to believe that on or about November 6, 2015, in the Eastern District of Virginia, the defendant, **ROBERT MATTHEW MCCRICKARD**, did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit 18 U.S.C. § 1344 (Bank Fraud), knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

 

 

_____
Mikel Brancato
United States Postal Inspector
United States Postal Inspection Service

Approved by:  AUSA Laura Fong

Subscribed and sworn to before me on the 16th day of December, 2016.

_____ /S/ _____
John F. Anderson
United States Magistrate Judge
Honorable John F. Anderson
United States Magistrate Judge
Alexandria, Virginia

6

JS 45 (01/2008)                    **FILED UNDER SEAL PURSUANT TO THE E-GOVERNMENT ACT OF 2002**

Criminal Case Cover Sheet                                                      U.S. District Court

| | | |
|---|---|---|
| Place of Offense: | Under Seal:Yes X__ No____ | Judge Assigned: |
| City | Superseding Indictment | Criminal Number: |
| County/Parish Fairfax | Same Defendant | New Defendant   X |
| | Magistrate Judge Case Number 1:16MJ 569 | Arraignment Date: |
| | Search Warrant Case Number | |
| | R 20/R 40 from District of | |
| | Related Case Name and No: | |

Defendant Information:

Juvenile --Yes ___ No  X   FBI #   509423X6

Defendant Name: ROBERT MATTHEW MCCRICKARD          Alias Name(s)

Address:

Employment:

Birth date 02/22/1962 SS# 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 Sex M Def Race _____ Nationality _____ Place of Birth _____

Height _____ Weight _____ Hair _____ Eyes _____ Scars/Tattoos _____

Interpreter: X No _____ Yes List language and/or dialect: _____ Automobile Description _____

Location Status:

Arrest Date   March 10, 2016

___ Already in Federal Custody as of _____ in _____

X Already in State Custody    ___ On Pretrial Release    ___ Not in Custody

X Arrest Warrant Requested    ___ Fugitive    ___ Summons Requested

___ Arrest Warrant Pending    ___ Detention Sought    ___ Bond _____

Defense Counsel Information:

| | | |
|---|---|---|
| Name: | ___ Court Appointed | Counsel conflicted out: |
| Address: | ___ Retained | |
| Telephone: | ___ Public Defender | Federal Public Defender's Office conflicted out:___ |

U.S. Attorney Information:

AUSA  Laura Fong        Telephone No:   703-299-3934        Bar #

Complainant Agency, Address & Phone Number or Person & Title:

Mikel Brancato, United States Postal Inspector, United States Postal Inspection Service

U.S.C. Citations:

| | Code/Section | Description of Offense Charged | Count(s) | Capital/Felony/Misd/Petty |
|---|---|---|---|---|
| Set 1 | 18 U.S.C. § 1028A(a)(1) | Aggravated Identity Theft | 1 | Felony |
| Set 2 | | | | |
| Set 3 | | | | |

(May be continued on reverse)

Date:   12/14/16        Signature of AUSA:

JS 45 (01/2008)                          **REDACTED**

Criminal Case Cover Sheet                                        U.S. District Court

| | | | |
|---|---|---|---|
| **Place of Offense:** | Under Seal:Yes X No | Judge Assigned: | |
| City | Superseding Indictment | Criminal Number: | |
| County/Parish Fairfax | Same Defendant | New Defendant X | |
| | Magistrate Judge Case Number 1:16MJ569 | Arraignment Date: | |
| | Search Warrant Case Number | | |
| | R 20/R 40 from District of | | |
| | Related Case Name and No: | | |

Defendant Information:

Juvenile —Yes ___ No X FBI # ___xxxx23X6___

Defendant Name: ROBERT MATTHEW MCCRICKARD          Alias Name(s) ___

Address: ___

Employment: ___

Birth date xx/xx/1962 SS# xxx-xx-7582 Sex M Def Race ___ Nationality ___ Place of Birth ___

Height ___ Weight ___ Hair ___ Eyes ___ Scars/Tattoos ___

Interpreter: X No ___ Yes List language and/or dialect: ___ Automobile Description ___

Location Status:

Arrest Date   March 10, 2016 ___

___ Already in Federal Custody as of ___ in ___

X Already in State Custody   ___ On Pretrial Release   ___ Not in Custody

X Arrest Warrant Requested   ___ Fugitive   ___ Summons Requested

___ Arrest Warrant Pending   ___ Detention Sought   ___ Bond ___

Defense Counsel Information:

Name: ___   ___ Court Appointed   Counsel conflicted out: ___

Address: ___   ___ Retained   ___

Telephone: ___   ___ Public Defender   Federal Public Defender's Office conflicted out:___

U.S. Attorney Information:

AUSA  Laura Fong ___   Telephone No:  703-299-3934 ___   Bar # ___

Complainant Agency, Address & Phone Number  or Person & Title:

Mikel Brancato, United States Postal Inspector, United States Postal Inspection Service ___

U.S.C. Citations:

| | **Code/Section** | **Description of Offense Charged** | **Count(s)** | **Capital/Felony/Misd/Petty** |
|---|---|---|---|---|
| | 18 U.S.C. § | | | |
| Set 1 | 1028A(a)(1) | Aggravated Identity Theft | 1 | Felony |
| Set 2 | | | | |
| Set 3 | | | | |

(May be continued on reverse)

Date:  12/14/16   Signature of AUSA:  _(signature)_

# EXHIBIT 2

# CERTIFICATION

STATE OF MARYLAND, CHARLES COUNTY, TO WIT:

I HEREBY CERTIFY, that the above and foregoing is a true and correct copy of Search Warrant Number **SO-16-31** as taken from the Records of the Circuit Court for Charles County, Maryland.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of the Circuit Court for Charles County, Maryland, this 16th day of June 2016.

Sharon L. Hancock, Clerk
Circuit Court for Charles County, Maryland

  

**FILED** *Charles County Sheriff's Office*

MAR 1 5 2016

CIRCUIT COURT
FOR CHARLES CO., MD.

**RETURN**

(Search Warrant No. SO-16-031 )

I received the attached Search & Seizure Warrant on _____03/11_____, 20**16**, and have executed it as follows:

On _____03/11_____, 20**16**, at __2.57__ o'clock, __A__ m, I searched the vehicle(s), premises and/or person(s) described in the Warrant and left a copy of the Warrant with __in room #102 and Darrin Martin__, together with an inventory of the property taken.

The following property was seized pursuant to the warrant:

Glass vial w/ 8 capsules of herion, glassine envelopes
grey pouch w/ needles, spoon, tweezers
package of 8 needles
multiple phone charges
numerous financial documents
numerous cell phones
Sim cards
plastic sleeves
numerous gift cards
numerous drivers license in various names & states
2 silver keys & 4 gold keys
Pan digital tablet
numerous house/apartment lease
numerous financial documents and checkbooks
Hotel receipt
numerous social security card
Card readers
ecoding device and Keneth Cole Suitcase

This inventory was made in the presence of __POI  B.  Chambers__

I swear that the afore going inventory is a true and detailed account of all the property taken pursuant to the Warrant.

POI B. CMM (Chambers) 604

Subscribed and sworn to before me this _____11_____ Day of __March__, A.D. 20**16**

Thomas R. Simpson, Jr.
Judicial Officer

CIRCUIT COURT JUDGE
Designation

FOR CHARLES COUNTY MD
Judicial Officer

Mr. Clerk: Please file pursuant to Maryland Rule 707.

CCSO Form # 908 (03/06)

# APPLICATION FOR SEARCH & SEIZURE WARRANT

**#SO-16-031**

The undersigned herewith makes application for issuance of a Search & Seizure Warrant for the reason that probable causes exists to believe that property subject to seizure under the criminal laws of the State of Maryland, particularly **Title 5, Subtitle 6** of the Criminal Law Article, is to be found in or upon the hereinafter described vehicle/premises.

The object of the proposed search is described in the Affidavit(s) attached to this Application, which Affidavit(s) is incorporated herein and made part of the Application for presentation to a Judicial Officer.

The Applicant is a law enforcement officer assigned in Charles County, Maryland, as hereinafter set forth.

The grounds for the search and the basis for probable cause are as set forth in the aforementioned Affidavit(s).

This Application and the accompanying Affidavit(s) will be submitted to the Judicial Officer at and on the same time, as indicated below.

Wherefore, the Applicant prays that a Search & Seizure Warrant be issued authorizing him, with the necessary and proper assistance, in the day or night, to enter and search the hereinafter named vehicle/premises, and to search all persons found in or upon or who may enter the same, and to search for and seize all paraphernalia used in connection with, or incidental to the operation of the aforementioned or any criminal activities, and to seize any evidence pertaining to such criminal activity; the Applicant further prays that the Warrant run to any safe or container, locked or unlocked, found in or upon said vehicle/premises/person, and to seize such of the contents as pertain to the subject criminal activities, and particularly such articles as may be set forth and described in the Affidavit(s) attached hereto.

This Application, including attached Affidavit(s), subscribed and sworn to this 11th day of _March_, in the year 2016, A.D. at 2:30 o=clock _a_ m.

**Lt. Robert Kiesel #229**
Applicant
**Commander, Narcotics Enforcement**
Charles County Sheriff's Office

Subscribed and sworn to before me this 11 day of _March_, in the year 2016, A.D. at 2:51 o=clock _a_ m.

_____
Judicial Officer

_____
Designation

## SEARCH & SEIZURE WARRANT     No. SO-16-031

State of Maryland, Charles County, Sct:

The State of Maryland to **TROY D. BERRY**
**SHERIFF, CHARLES COUNTY SHERIFF'S OFFICE** .
or any duly sworn law enforcement officer under his authority¨

GREETINGS:

    Whereas it appears to me the subscriber, from the written Application and accompanying Affidavit(s) submitted by **Lt. Robert Kiesel #229** on _____ that there is probable cause to believe that certain property subject to seizure under criminal laws of the State of Maryland, particularly **Title 5, Subtitle 6** of the Criminal Law Article, is located in or upon the vehicle/premises/person described as:

The location is Room 102 of the Super 8 Motel at 4694 Indian Head Hwy Indian Head, Charles County, Maryland. The room is located on the first floor of the Super 8 Motel and the numbers 102 are affixed to the left of the brown door. The Super 8 Motel is a three story building located on the Southbound side of Indian Head Hwy (Rt. 210) just south of the intersection with Maryland Route 225. From westbound Hawthorne Road (Rt. 225) turn left onto southbound Indian Head Hwy (Rt. 210) and travel approximately ¼ mile. Turn right from southbound Indian Head Hwy into the parking area of the Super 8 Motel.

YOU ARE HEREBY COMMANDED, with the necessary and proper assistance, in the day or night, to enter the aforementioned vehicle/premises/person and to:

1.    Search the named vehicle/premises/person described herein;
2.    Enter and search any vehicle upon the premises or entering the premises which may be employed in fashion similar to the named vehicle(s);
3.    Search the person of any individual upon the premises or entering the premises who may be conducting himself in fashion similar to that of the named person(s);
4.    Open any safes, boxes, bags, compartments, or things in the nature thereof found in or upon said vehicle, premises, or person, whether the same be locked or unlocked;
5.    Seize all evidence and paraphernalia found which may be used in connection with purported violations of the aforementioned criminal statutes; to wit:
    Any controlled dangerous substance in any form, packaging materials, scales and paraphernalia; documents and electronic information showing proof of ownership or occupancy, and proof of drug sales and/or transactions; photographs, video/audiotapes and film; any money, electronic devices, firearms, ammunition or other weapon connected with any controlled dangerous substance. Cellular phones and their contents.
6.    Bring before me, within five days of the execution of this Warrant, all items seized pursuant to its terms or your accounting therefor.

HEREOF FAIL NOT AT YOUR PERIL, AND HAVE YOU THEN AND THERE THIS WARRANT.

WITNESS my hand and the Seal of this Court.

DONE at _____, this ___ day of _____

Affiant: Lt. Bob Kiesel #229 Commander, Narcotics Enforcement Section

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH & SEIZURE WARRANT   No.SO-16-031

AFFIANT:     **Lt. Robert Kiesel #229**
             **Commander, Narcotics Enforcement Section**

COMES NOW the named Affiant and on his oath states to _____ Amy B Ranin _____
A Judicial Officer for the body of Charles County, State of Maryland, that there is probable cause, the basis of which is as set forth below, to believe that property subject to seizure under the criminal laws of the State of Maryland, particularly **Title 5, Subtitle 6** of the Criminal Law Article, is to be found in, or upon the following narrative:

The location is Room 102 of the Super 8 Motel at 4694 Indian Head Hwy Indian Head, Charles County, Maryland. The room is located on the first floor of the Super 8 Motel and the numbers 102 are affixed to the left of the brown door. The Super 8 Motel is a three story building and is located on the Southbound side of Indian Head Hwy (Rt. 210) just south of the intersection with Maryland Route 225. From westbound Hawthorne Road (Rt. 225) turn left onto southbound Indian Head Hwy (Rt. 210) and travel approximately ¼ mile. Turn right from southbound Indian Head Hwy into the parking area of the Super 8 Motel.

**AS A BASIS FOR THIS BELIEF**, the Affiant states:

That he is Lieutenant Robert P. Kiesel #229 of the Charles County Sheriff's Office.   He is a sworn officer with the said agency.   He has been a sworn officer of said agency since September of 1994. That as part of his initial police training, he attended and successfully completed the basic police recruit school instructed at the Southern Maryland Criminal Justice Academy in Glasva, Maryland. During the course of this training, he was instructed in the identification, detection and field testing of controlled dangerous substances.

Upon completion of the Southern Maryland Criminal Justice Academy, your Affiant was assigned to the patrol division of the Charles County Sheriff's Office.   During that time, your Affiant made numerous seizures of controlled dangerous substances and has arrested numerous persons for violating the controlled dangerous substance laws.   Your Affiant has been assigned to the criminal investigations division, vice/narcotics section since April of 1997.

Prior to becoming a police officer, your Affiant attended the University of Maryland.   While attending the University of Maryland, your Affiant majored in Criminology and Criminal Justice and received a Bachelor of Arts Degree in December of 1993.

Your Affiant is a Certified Field Training Officer through the Charles County Sheriff's Office. Your Affiant has written and has assisted in the execution of numerous search and seizure warrants.

He has testified within the District and Circuit Courts for Charles County, Maryland, and in the United States District Court and his testimony has been accepted by those courts.   Additionally, your Affiant has testified before a Federal Grand Jury and the Grand Jury for Charles County, Maryland. Your Affiant has been recognized and certified as a Drug Expert in the Circuit Court for Charles County, Maryland.

## AFFIDAVIT IN SUPPORT OF APPLICATION
### FOR SEARCH & SEIZURE WARRANT    No.SO-16-031

During the first week of October 1997, your Affiant attended the Clandestine Laboratory School at the Drug Enforcement Administration facility at the Quantico Marine Corps Base in Quantico, Virginia.   While attending the Clandestine Laboratory School, your Affiant was instructed in the hazards of chemicals used in clandestine drug laboratories, the detection of clandestine laboratories and the processing of clandestine laboratories.   The Drug Enforcement Administration has certified your Affiant as being a Clandestine Laboratory Technician.

During the month of April 1999, your Affiant attended an advanced narcotics investigators school put on by the Multijurisdictional Counterdrug Task Force/St Petersburg Junior College.   Your Affiant received training in advanced undercover operations, interview and interrogation, conspiracy investigations and specialized electronics.

During the month of September 2000, your Affiant attended and successfully completed training in the investigation of club and designer drugs conducted by the United States Department of Justice, Drug Enforcement Administration, at the Holiday Inn, College Park, Maryland.   Instruction was provided in the following: area club drug trends; domestic and foreign production of ecstasy (3,4-methylenedioxymethamphetamine or MDMA), MDMA (3,4-methylenedioxyamphetamine), GHB (gamma hydroxy butyrate) and methamphetamine; identification, pharmacology and investigation of ecstasy (MDMA), GHB, ketamine, rohypnol (flunitrazepam), heroin, cocaine, methamphetamine, LSD (lysergic acid diethylamide), inhalants and related "designer drug" analogues and chemical precursors; raves and rave culture; undercover operations and tactics; and sexual assault involving club drugs and Adate rape@ drugs.

Since December of 2014, your affiant has been assigned as the Commander of the Narcotics Enforcement Section of the Criminal Investigations Division of the Charles County Sheriff's Office.

----------------------------------------------------------------------------------------------------

All of the following information is either known by your affiant personally or was relayed to your affiant through law enforcement computer databases, reports or information from sworn law enforcement officers.

On March 10, 2016, at approximately 2029 hours in the evening, Patrolman I Bryan Chambers #604 of the Charles County Sheriff's Office was on routine patrol in the Indian Head area of Charles County, Maryland when he observed a grey Dodge Caravan bearing Maryland Registration 3CB6320 traveling Northbound on Rt 210.   He observed the vehicle did not have an operable tag light.   He followed the vehicle as it made a u-turn and went south on Rt. 210.   He initiated his emergency lights and siren and the vehicle pulled into the Super 8 Motel located at 4694 Indian Head Hwy and pull into a parking spot.   He approached the driver who stated he did not have a license. He stated his name was Robert Matthew McCrickard and his date of birth is February 22, 1962. He told Officer Chambers that the vehicle was a rental vehicle and handed him a pink paper. The paper stated, Robert Matthew McCrickard rented the vehicle on January 29, 2016 and the return date was supposed to be February 12, 2016.   Officer Chambers questioned him about the return date and he stated he just goes by the rental place in Laurel and gives the guy money and the individual does not do another rental agreement.   There is no business name listed on the rental agreement.   Running the vehicle's registration plate through the Maryland Motor Vehicle Administration data base reveals it is registered to J and J Auto Rentals, located at 9865 Washington Blvd, Laurel, Maryland. Robert Matthew

## AFFIDAVIT IN SUPPORT OF APPLICATION
### FOR SEARCH & SEIZURE WARRANT    No.SO-16-031

McCrickard told Patrolman Bryan Chambers he lives in Baltimore and was staying at the Super 8 "laying low". He stated he missed a court date and had a bench warrant. His attorney advised him he would have the bench warrant recalled and to lay low for a few days until he could get it cleared up. A check through the Maryland Judiciary Case Search revealed Robert Matthew McCrickard had a bench warrant from Baltimore City that was recalled on March 08, 2016.

A check with the front desk clerk of the Super 8 Motel revealed Robert Matthew McCrickard checked in to the hotel on March 3, 2016 and had been staying there since then in Room 102.

Robert Matthew McCrickard was found to have a warrant out of Alexandria, Virginia and was arrested. A search of his person revealed two cell phones in his jacket pocket. He had a Black Microsoft and a white Samsung Galaxy Prebail LTE. He also had a gold I phone 6 on the passenger seat of the vehicle. Money in the following denominations was recovered from his inside jacket pocket: $720 dollars in twenty dollar bills, $20 in five dollar bills, $4 in one dollar bills and two $1 gold coins. In his wallet he had a Maryland Department of Human Resources Card in his name. He stated the card was his food stamp card.

Once arrested Robert Matthew McCrickard asked if he could pay the clerk for additional nights so he could call the owner of the vehicle to come get the vehicle and his property in the room. He asked if officers would lock his room key in the vehicle so the individual could get in the room. Master Sergeant Jody Susan Pyburn of the Charles County Sheriff's Office, who was on the scene, asked him what the name of the individual who was coming to get the vehicle and property. He stated he didn't know the name of the individual coming to get the vehicle and property. She asked him, "you don't know the name of the individual" and he said it would probably be Gary. Master Sergeant Jody Susan Pyburn asked McCrickard if he knew the number to call "Gary" and he stated it was in his phone. He pointed to one of the three phones. Master Sergeant Jody Susan Pyburn picked up the phone and asked how to locate the number and he stated he would have to do it. She handed him his phone and took one hand out of the hand cuffs. He manipulated the phone for a minute and then stated he could not get into his phone. He then showed the screen and the password screen was up.

A check of the National Crime Information Computer system (NCIC), revealed the following criminal history for controlled dangerous substance related offenses in the state of Maryland for Robert Matthew McCrickard, a white male with a date of birth of February 22, 1962:

January 29, 2013-CDS admin equipment/distribution, Baltimore City Police Department

July 27, 2011-Possession with the Intent to Distribute, Manufacturing CDS, Possession of a firearm while drug trafficking, possession of marijuana, PWID-Narcotic, Anne Arundel County Police Department.

January 2, 2009-Possession-not marijuana and possession of CDS paraphernalia, Washington County Sheriff's Office

April 30, 2008-Possession CDS paraphernalia, Maryland Transportation Authority

June 15, 2007-Possession of marijuana, Howard County Police Department

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH & SEIZURE WARRANT   No.SO-16-031

The NCIC database also showed Robert Matthew McCrickard has been arrested numerous times for various offenses in Virginia, Florida, New York and South Carolina which included an arrest on December 4, 2013 for possession of methamphetamine/cocaine base by the Columbia (SC) Police Department.

Master Sergeant Pyburn, based on her training and experience as a Police Officer including an assignment in the Narcotics Enforcement Section, the presence of a large amount of currency in $20.00 denominations, multiple cellular phones, the criminal history of McCrickard and his behavior and suspicious explanation of the rental vehicle, requested the assistance of a Canine Officer and their partner to perform a drug scan.

Corporal Renee Cuyler of the Charles County Sheriff's Office and her K-9 partner "Cooper" responded to the Super 8 Motel and attempted a scan for controlled dangerous substances. Cpl. Cuyler and her partner began at one end of an open hallway of the Super 8 which contained 5 closed doors. Cpl. Cuyler "cast" her K-9 partner down the hallway. "Cooper" sniffed 4 closed doors and continued to the fifth door. At the fifth door "Cooper" sniffed the door handle and then moved down to the opening at the bottom of the door. "Cooper" then gave a positive indication for the presence of controlled dangerous substances by scratching and barking at the door. The door which showed a positive indication was room 102 of the Super 8 Motel which is located and described as above.

Corporal Renee Cuyler #295 and her partner "Cooper" are certified through the Charles County Sheriff's Office in Narcotics detection after completing the Charles County Sheriff's Office Basic Narcotics detection school. "Cooper", who is a black and tan Belgian Malinois, began training in 2015. In addition to completing the basic school K-9 "Cooper" receives a minimum of 10 hours of narcotics training per month and has performed numerous scans of vehicles and buildings for controlled dangerous substances. During several of those scans "Cooper" has provided a positive response for the presence of controlled dangerous substances which were subsequently recovered by officers searching those vehicles/buildings. Those recovered substances were subsequently tested by the Maryland State Police Laboratory and were found to be Controlled Dangerous substances.

Master Sergeant Pyburn #250 advised your affiant that Room #102 of the Super 8 Motel in Indian Head, Charles County, Maryland is located and described as in the above paragraph.

Robert Matthew McCrickard is a white male with the date of birth of February 22, 1962. A check of the Charles County Sheriff's Office database indicates Robert Matthew McCrickard has never previously had contact with the Charles County Sheriff's Office.

Your affiant knows from his training and experience that drug dealers engage in on-going enterprises. Your affiant knows that drug dealers will frequently and continuously replenish their supplies of controlled dangerous substances, sell their product, and then acquire more. Your affiant knows this process includes repackaging of controlled dangerous substances using cellophane baggies, razor blades, scales, and other items. Your affiant knows that even in-between the sale and acquisition of controlled dangerous substances, packaging material remains at the drug dealers residence, as well as items such as tally sheets (to keep track of sales, customers, and monies owed), and other items of paraphernalia associated with the distribution of controlled dangerous substances.

Page 5 of 6
### AFFIDAVIT IN SUPPORT OF APPLICATION
### FOR SEARCH & SEIZURE WARRANT    No.SO-16-031

Based on your Affiants training and experience, your Affiant knows that drug dealers commonly maintain records including, but not limited to, the following: names of customers and associates, telephone numbers of customers and associates, figures of money owed to them by drug dealers and drug customers, bank account records, telephone toll records and records of legitimate income.   Your Affiant knows, through training and experience, that drug dealers often use computers for the following: to store and maintain the records described above; to order supplies and equipment for use, manufacture and distribution of their drugs; to conduct research in order to better produce and market their drugs; and to obtain and communicate with customers, suppliers and associates.   Your Affiant knows, through training and experience, that drug dealers commonly use cellular telephones, digital pagers and the Internet to communicate with customers and associates.   Your Affiant knows, through training and experience, that drug dealers use electronic scanners to intercept police radio transmissions.   Your Affiant knows, through training and experience, that drug dealers commonly use scales to weigh quantities of drugs being sold.   Your Affiant knows, through training and experience, that drug dealers often photograph and video/audiotape themselves and their drugs and that they retain these photographs and tapes.   Your Affiant knows, through training and experience, that drug dealers commonly carry and maintain weapons including firearms to prevent intervention by law enforcement, to protect themselves from being robbed by drug customers and to protect their property, including their homes, money, drugs and real property.   Your Affiant knows, through training and experience, that drug dealers commonly secrete their drugs, money, weapons and ammunition either on their person or in their vehicles, buildings, sheds, residence or the surrounding property.

Based on the afore going information and observations, your Affiant believes certain provisions of the States controlled dangerous laws are currently, and have been, violated by Robert Matthew McCrickard.   Your Affiant prays that a search and seizure warrant be issued authorizing the search of said residence as described on page one of this Affidavit.   Your Affiant prays the warrant include the authority to seize the following: any documents showing proof of ownership and/or occupancy, evidence of all illegal drug sales, customers telephone numbers, telephone toll records, bank records and any other documents showing legitimate and/or illegal income; any and all controlled dangerous substances, scales, packaging materials and related paraphernalia; cellular telephones; telephone answering devices, Caller ID boxes, digital pagers, scanners, computers and all computer components, any other electronic equipment and any information contained in said electronic equipment; photographs, video/audiotapes and film; any weapons connected with illegal drugs including firearms and ammunition; and money related to illegal drugs.

Page 6 of 6
## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH & SEIZURE WARRANT     No. SO-16-031

I hereby swear and affirm, under the penalties of perjury, the facts and information contained within this Affidavit are true and correct to the best of my knowledge and belief.

Subscribed and sworn to this 11th day of March, 2016.

_____  #229

Lt. Robert Kiesel #229

Subscribed and sworn to before me this 11th day of March, 2016.

_____

JUDICIAL OFFICER

_____

DESIGNATION

## ATTACHMENT A

## ITEMS TO BE SEARCHED

The items to be searched are:

- Wig

- Hat

- Sunglasses

- Blazer

- Purse

- Numerous cellular telephones

- Money Orders

- Mail addressed to multiple individuals

- J&J Auto Rental Receipt

- Suitcase with ID Cards

- Financial documents, credit cards, debit cards, checkbooks

- Identification documents/cards

- Any other property held under APD Case #15-184898

- Any other property held under APD Case # 16-116728

The items are currently located at the Alexandria Police Department ("APD"), 3600 Wheeler Ave, in Alexandria, Virginia, which is within the Eastern District of Virginia.

ATTACHMENT B

ITEMS SUBJECT TO SEARCH AND SEIZURE

The items to be seized constitute fruits, evidence, contraband, and instrumentalities of

violations of Title 18, United States Code, Sections 1028A (aggravated identity theft) and 1344

(bank fraud), including:

1.    Clothing and disguises used by MCCRICKARD and co-conspirators

2.    Records and documents for financial accounts, lines of credit, utility bills, rental records

3.    U.S. Mail addressed to all names

4.    Parcels addressed to all names

5.    Credit or debit cards

6.    Cell phones

7.    Counterfeit identification cards, driver's licenses, social security cards

8.    ID manufacturing devices

9.    Credit card skimmers, readers, or other related equipment

10.   Currency, Money Orders and other financial instruments

In addition, information to be obtained from cellular phones contained in the SUBJECT

PROPERTY is the fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 1028A, and

includes the following items that may be located on and in the above-described devices including

associated external storage media capable of storing information physically located within the

cellular phones:

    A.   Subscriber information modules (SIM cards[1])

    B.   Address books and calendars;

    C.   Audio and video clips

    D.   Call histories and call logs, including incoming, outgoing and missed calls

    E.   Photographs and associated metadata[2]

    F.   Text messages, multimedia messages, recorded messages and voicemails

    G.   E-mail messages and attachments, whether read or unread

    H.   Internet World Wide Web (WWW) browser files including, but not limited to, browser history, browser cache, stored cookies; browser favorites, auto-complete form history and stored passwords;

    I.   Global position system (GPS[3]) data including, but not limited to coordinates, way points and tracks;

---

[1] Subscriber Identity Modules, sometimes referred to as SIM cards, are portable memory chips often used in notebook computers and some models of cellular phones. SIM cards securely store the service-subscriber key used to identify subscribers. The SIM card allows users to change phones by simply removing the SIM card from one mobile phone and inserting it into another mobile phone or broadband telephony device. SIM cards store information used to authenticate and identify subscribers, including but not limited to the Service Provider Name, Service Dialing Numbers and Value Added Service applications. They can also be used to store personal address books and SMS data.

[2] Metadata is generally defined as data about data. It is stored within the data file itself, but is not normally seen when viewing the file. Metadata includes Exchangeable Image File Format (EXIF) which is a specification for image file formats used by digital camera and includes specific information about the photograph.

[3] The Global Positioning System (GPS) is a satellite-based navigation system which provides location and time information.